UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LEONARD PRICE                                    CIVIL ACTION

VERSUS                                           NO: 09-4257

HOUSING AUTHORITY OF NEW                         SECTION: R(4)
ORLEANS, ET AL.

**ORDER AND REASONS**

Before the Court is the motion to dismiss of defendants Desire Area Residents Council (DARC), Kathleen Mathew, Margaret McMillan, and Bonnie Rogers. For the following reasons, the motion is GRANTED in part and DENIED in part.

I.  **BACKGROUND**

On July 9, 2009, plaintiff Leonard Price brought this action *pro se* against the Housing Authority of New Orleans (HANO), DARC and various officials associated with these two organizations.[1] Price alleges that HANO is a political subdivision of Louisiana,

---

[1]    (R. 1, 22.)

and that DARC is a "non-profit organization authorized by the State of Louisiana to conduct business affairs on behalf of residents of Desire Development."[2] Price's substantive allegations concern HANO's and DARC's administration of the federal Hope VI Revitalization program for the Desire area in the Ninth Ward of New Orleans.[3] Price asserts that HANO and DARC unlawfully deprived him of economic, employment and managerial opportunities and entitlements in violation of equal protection, due process, and federal and state statutes.[4]

**II. STANDARD**

To survive a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Twombly* and *Iqbal*, a plaintiff must plead enough facts "to state a claim to relief that is plausible

---

[2] (R. 1 ¶ II(2).)

[3] HOPE is an acronym for "Homeownership and Opportunity for People Everywhere." Pub. L. 102-389, 106 Stat. 1571, 1579 (1992). The HOPE program was created in 1992 "to revitalize severely distressed or obsolete public housing developments by funding a mixture of local public housing authority activities on a competitive grant basis." *Gautreaux v. Chicago Hous. Auth.*, 178 F.3d 951, 953-54 (7th Cir. 1999). The HOPE VI program is authorized under 42 U.S.C. § 1437v. *See* Pub. L. 108-186, Title IV, §§ 401-03, 117 Stat 2685, 2693-96 (2003).

[4] (R. 1 ¶¶ III(4), (8), (9), (11), (16).)

on its face."[5]  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]  The factual allegations must "raise a reasonable expectation that discovery will reveal evidence" of liability.[7]  "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.[8]  The court is not, however, bound to accept as true legal conclusions couched as factual allegations.[9]  Although *pro se* plaintiffs are held to less stringent standards than those drafted by lawyers, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[10]

---

[5] *Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[6] *Iqbal*, 129 S.Ct. at 1949.

[7] *Twombly*, 550 U.S. at 556.

[8] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

[9] *Iqbal*, 129 S.Ct. at 149-50.

[10] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

**III. DISCUSSION**

**A. Title VII**

Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire . . ., or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[11] The term "employer" includes any "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." Before bringing a Title VII action in federal court, an individual must first exhaust his administrative remedies.[12] Exhaustion occurs when the individual files a timely charge with the Equal Employment Opportunity Commission (EEOC) and receives a notice of right to sue.[13] Filing an EEOC charge is a precondition to filing suit in federal court.[14]

---

[11] 42 U.S.C. § 2000e-2(a)(1).

[12] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008).

[13] *Id.*

[14] *Id.*

Nothing in the record indicates that Price filed an EEOC charge or received a notice of right to sue before filing this action. Because Price has not pursued and exhausted his administrative remedies under Title VII, his Title VII claim must be DISMISSED.

**B. Section 1983**

The DARC defendants contend that they cannot be held liable under § 1983 because: (1) they do not act under color of state law; (2) Price's § 1983 claims have prescribed; and (3) 12 U.S.C. § 1701u does not create an individual right enforceable under § 1983.

    1.   <u>Under Color of State Law</u>

To maintain a claim under 42 U.S.C. § 1983, Price must allege that the DARC defendants violated a right secured by the Constitution or the laws of the United States, and that the deprivation was committed by a person acting under color of state law.[15] Price has alleged that the DARC defendants allocated public benefits in connection with the Hope VI Revitalization of the Desire Development in violation of the Equal Protection and

---

[15] *See Cornish v. Corr. Servs. Corp.* 402 F.3d 545, 549 (5th Cir. 2005) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Due Process Clauses of the Fourteenth Amendment. Although Price faces an uphill battle demonstrating that his constitutional rights have been violated, the DARC defendants have not moved to dismiss these claims on substantive grounds. The DARC defendants do move to dismiss on grounds that they do not act under color of state law, and that Price's § 1983 claims have prescribed.

"Mere private conduct, no matter how discriminatory or wrongful, is excluded from § 1983's reach."[16] Whether a private entity acts under color of state law "is a matter of normative judgment, and the criteria lack rigid simplicity."[17] There is no single set of circumstances that is necessary or sufficient to establish state action.[18] The Supreme Court has identified at least four frameworks for analyzing state action.[19] First, a private entity may be deemed a state actor when the entity performs a function that is traditionally the exclusive province

---

[16] *Id.* at 549 (brackets omitted).

[17] *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295-96 (2001).

[18] *Id.* at 296.

[19] *See, e.g., Cornish*, 402 F.3d at 549-50 (summarizing tests); *cf. Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982) (stating that in § 1983 action "the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical"); *see also Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995) (same).

of the state.[20] Second, state action may be found when the state "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."[21] Third, state action may be found when there is "public entwinement in the management or control of an organization."[22] Lastly, a private party acts under color of state law when "he is a willful participant in joint activity with the State or its agents."[23] In *Adickes*, the Supreme Court found that a restaurant acted under color of state law when it conspired with a police officer to arrest a customer on the basis of her race.[24]

Price has pleaded facts suggesting that DARC and HANO are willful participants in the joint activity of distributing benefits in connection with the Hope VI Revitalization of the

---

[20] *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978); *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989).

[21] *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

[22] *Brentwood*, 531 U.S. at 298-99.

[23] *Id.* at 152.

[24] 398 U.S. at 152; *see also Dennis v. Sparks*, 449 U.S. 24, 28 (1980) (finding that private persons acted under color of state law when they unlawfully conspired with judge); *see also Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961) (finding that restaurant acted under color of state law when it excluded black customer from building leased from state).

Desire Development.[25] Price alleges that DARC and HANO entered into a memorandum of understanding (MOU) governing the "planning, reconstruction and re-occupancy" of the Hope VI Revitalization of the Desire Development.[26] Under the MOU, HANO and DARC agreed to meet at least 12 times annually, and HANO agreed to "provide transportation for DARC" when meetings are not held at DARC's premises.[27] HANO and DARC also agreed to hold six public meetings annually, and HANO, "with DARC's assistance," would be responsible for announcing the meetings.[28] HANO and DARC further agreed to "formulate committees which will select the best qualified architects, employment programs, design, finances, construction and other decisions as needed during the planning and reconstruction of Desire, LA 1-14."[29] HANO and DARC "will develop, review and approve" a Resident Hiring and Job Training

---

[25] *Jackson*, 419 U.S. at 357-58.

[26] The Court may consider the MOU in resolving the DARC defendants' motion to dismiss because Price refers to the MOU in his complaint and because the MOU is central to his claims. *See Kane Enters v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

[27] (*Id.* ¶ 3.)

[28] (*Id.* ¶ 4.)

[29] (*Id.* ¶ 3.)

8

Plan and Management Plan.[30] HANO "will consider DARC or Desire Resident [*sic*] for available contracts" and "will provide DARC with on the job training, apprenticeship and monitoring."[31] HANO will also "train residents for all types of economic opportunities, including but not limited to management, entrepreneurship, construction and maintenance."[32] For its part, "DARC will participate with the identification and selection of the Desire residents in hiring programs."[33]

The terms of the MOU suggest that DARC is not merely an independent contractor performing services on the Hope VI revitalization of the Desire Development.[34] Nor is DARC merely acting with the approval or acquiescence of HANO.[35] Rather, the MOU contemplates that decisions on how to allocate public

---

[30] (*Id.* ¶ 5.)

[31] (*Id.*)

[32] (*Id.* ¶ 10.)

[33] (*Id.*)

[34] *Cornish*, 402 F.3d at 549 (stating that the "[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts").

[35] *See Blum*, 457 U.S. at 1004-05 ("Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment.").

9

benefits will be made jointly by HANO and DARC through their entwinement in a variety of mechanisms. HANO and DARC have agreed to meet together, form committees together, and develop hiring, training and management plans together. DARC has agreed to identify area residents for hiring programs, and HANO has agreed to hire and train them. To the extent HANO and DARC jointly agreed to deprive Price of his constitutional rights, which is what Price alleges, it cannot be said that DARC's actions are purely private and not fairly attributable to HANO.

The DARC defendants rely on *American Manufacturers Mutual Insurance Company v. Sullivan*.[36] In *Sullivan*, the Supreme Court held that a private insurer did not act under color of state law when it withheld a payment for a disputed medical treatment.[37] The Supreme Court reasoned that although the insurer was extensively regulated by the state, the decision to withhold the payment was made by the insurer alone and turned on judgments made by the insurer without standards established by the state.[38] This case, at least as alleged, is not controlled by *Sullivan*. Under the MOU, HANO does not merely regulate or acquiesce in

---

[36] 526 U.S. 40 (1999).

[37] *Id.* at 51.

[38] *Id.* at 52.

DARC's independent decisions with respect to the Hope VI Revitalization. Instead, HANO and DARC jointly decide how to allocate benefits by holding meetings, forming committees, drafting plans, and identifying beneficiaries. The alleged relationship between HANO and DARC is symbiotic, and, if proven, would support a finding that DARC acts under color of state law.

2. Prescription

Price alleges that HANO and DARC have unlawfully denied him benefits from 1995 through the present. In Louisiana, equal protection and due process claims brought under § 1983 are subject to a one-year prescriptive period.[39] Thus, Price's § 1983 claims are not barred by prescription to the extent they arose on or after July 9, 2008. Factual development will be necessary to determine when Price's equal protection and due process claims arose. The DARC defendants' motion to dismiss Price's § 1983 claims is DENIED at this time.

3. 12 U.S.C. § 1701u

In *Gonzaga University v. Doe*, the Supreme Court clarified

---

[39] *See* La. Civ. Code arts. 3492, 3536; *Bourdais v. New Orleans City*, 485 F.3d 294, 298 (5th Cir. 2007) (equal protection); *Jones v. Orleans Parish Sch. Bd.*, 688 F.2d 342, 344 (5th Cir. 1982) (due process).

11

that Section 1983 may be invoked to enforce only "unambiguously conferred" federal rights.[40] For a federal statute to confer a private right enforceable under § 1983, the statute must contain "rights-creating" language that is "phrased in terms of the persons benefitted."[41] It is not sufficient that a plaintiff is merely "within the general zone of interest that the statute is intended to protect."[42] If the statute has merely an "aggregate focus on the policies and procedures of the charged agency," it is not enforceable under § 1983.[43] The Fifth Circuit employs a three-part test to determine whether Congress intended to create a privately enforceable right: (1) Congress must have intended that the provision in question benefit the private plaintiff; (2) the asserted right must not be so 'vague and amorphous' that its enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the states, with the asserted right couched in mandatory rather than precatory terms."[44]

---

[40] 536 U.S. 273, 283 (2002).

[41] *Id.* at 284.

[42] *Id.* at 2843.

[43] *Id.* at 287-89.

[44] *Anderson v. Jackson*, 556 F.3d 351, 356 (5th Cir. 2009).

12

Under 12 U.S.C. § 1701u, the "Secretary" of HUD shall ensure that, "to the greatest extent feasible," opportunities for training and employment arising in connection with a housing rehabilitation are given to low- and very low-income persons residing within the metropolitan area in which the project is located.[45] Similarly, the Secretary shall ensure that, to the greatest extent feasible, contracts awarded for work to be performed in connection with a housing rehabilitation are given to business concerns that provide economic opportunities for low- and very low-income persons residing within the metropolitan area in which the assistance is expended.[46] Moreover, when "feasible," priority "should" be given to low- and very low-income persons, or businesses that provide economic opportunities for low- and very low-income persons, residing within the service area of the project or the neighborhood in which the project is located.[47] The Court observes that HOPE VI housing revitalizations are governed by 12 U.S.C. §§ 1701u(c)(2) and (d)(2) – as opposed to §§ 1701u(c)(1) and (d)(1) – because the HOPE VI program is authorized by 42 U.S.C. § 1437v and not

---

[45] 12 U.S.C. § 1701u(c)(2)(A).

[46] 12 U.S.C. § 1701u(d)(2)(A).

[47] 12 U.S.C. § 1701u(c)(2)(B), (d)(2)(B).

1437c, 1437g or 1437*l*.[48] Even if §§ 1701u(c)(1) and (d)(1) applied to this case, however, the Court's analysis and conclusions would be no different.

Like other recent courts to have considered the issue, the Court finds that § 1701u does not unambiguously confer individual rights.[49] First, § 1701u is explicitly directed only to the Secretary of HUD. The subsections of § 1701u relevant to this case do not even mention public housing agencies,[50] and no subsection imposes a direct obligation on public housing agencies as opposed to the Secretary.[51] By "directing the statutory command to the Secretary of HUD," § 1701u places the onus of

---

[48] *See* Pub. L. 108-186, Title IV, §§ 401-03, 117 Stat 2685, 2693-96 (2003).

[49] *See, e.g., Williams v. U.S. Dep't of Hous. & Urban Dev.*, Civ. A. No. 04-3488, 2006 WL 2546536, at *8 (E.D.N.Y. Sept. 1, 2006) (declining to find individual right); *Nails Constr. Co. v. City of St. Paul*, Civ. A. No. 06-2657, 2007 WL 423187, at *4-5 (D. Minn. Feb. 6, 2007) (same); *Pleasant v. Zais*, Civ. A. No. 07-3080, 2008 WL 4621761, at *4 (E.D. Wash. Oct. 17, 2008) (same); compare *Ramirez Leal & Co. v. City Demonstration Agency*, 549 F.2d 97, (9th Cir. 1976) (finding that city had obligation to negotiate with accounting firm).

[50] *See* 12 U.S.C. § 1701u(c)(2), (d)(2).

[51] 12 U.S.C. § 1701u(c)(1) and (d)(1) provide that the "Secretary shall require" public housing agencies to "make their best efforts" to provide opportunities to low- and very low-income persons.

compliance on the federal government and not private litigants.[52]
Second, section 1701u(f) requires the Secretary of HUD to consult
with other federal agencies that he "determines are necessary to
carry out this section."[53] Section 1701u(f) thus contemplates
that § 1701u will be "carr[ied] out" by the HUD Secretary in
consultation with other federal agencies and not by individual
litigants through § 1983 actions. Third, the Secretary of HUD is
required to ensure that training, employment and contracting
opportunities go to low- and very low-income persons only "to the
greatest extent feasible."[54] The term "to the greatest extent
feasible" is a generalized duty that focuses on aggregate
opportunities provided and not on "whether the needs of any
particular person have been satisfied."[55] This generalized duty

---

[52] *Anderson,* 556 F.3d at 357-58 (finding no privately enforceable right under 42 U.S.C. § 1437p); *see also Resident Council of Allen Parkway Village v. U.S. Dept. of Hous. & Dev.*, 980 F.2d 1043, 1052 (5th Cir. 1993) ("[W]hen a provision in a statute fails to impose a direct obligation on the States, instead placing the onus of compliance with the statute's substantive provisions on the federal government, no cause of action cognizable under section 1983 can flourish.").

[53] 12 U.S.C. § 1701u(f).

[54] 12 U.S.C. § 1701u(c)(2)(A), (d)(2)(A).

[55] *Blessing v. Freestone*, 520 U.S. 329, 343 (1997) (finding Title IV-D of Social Security Act does not create individual rights enforceable under § 1983 because statute merely requires States receiving federal child-welfare funds to "substantially comply" with requirements); *Suter v. Artist M.*,

15

is insufficient to create an individually enforceable right.[56]
Fourth, the Secretary of HUD has institutional competence to
determine the feasability of providing economic opportunities in
connection with the revitalization projects that it funds. This
Court, on the other hand, is ill-equipped to allocate scarce
employment and contracting opportunities at the Desire area
revitalization project. Lastly, HUD itself has enacted federal
regulations providing for administrative and not private
enforcement of § 1701u.[57] Although HUD's administrative
complaint process does not necessarily reveal congressional
intent,[58] it is consistent with the text and structure of §
1701u, which, as already discussed, places the onus of compliance
on the federal government. HUD's administrative complaint
process is also consistent with the HOPE VI program, which does
not provide for a private remedy, but does provide that "the
Secretary may require a grantee under this section to make

---

503 U.S. 347, 363 (1992) (finding Adoption Assistance and Child
Welfare Act of 1980 does not create individual rights because Act
merely requires States receiving funds to make "reasonable
efforts" to keep children out of foster homes).

[56] *Id.*

[57] *See* 24 C.F.R. §§ 135.70, *et seq.*

[58] *See Alexander v. Sandoval*, 532 U.S. 275, 291 (2001)
("Agencies may play the sorcerer's apprentice but not the
sorcerer himself.").

16

arrangements satisfactory to the Secretary for use of an entity other than the public housing agency to carry out activities assisted under the revitalization plan, if the Secretary determines that such action will help to effectuate the purposes of this section."[59] Again, Congress vested the Secretary of HUD and not private litigants with the authority to regulate the use of entities other than a public housing agency to carry out a revitalization plan.

For all of these reasons, the Court finds that § 1701u does not create an individually enforceable right, at least as alleged in this case, and Price's § 1983 claim based on this statute must be DISMISSED.

**C.  Pendent State Law Claims**

Because the Court does not dismiss all of Price's federal claims, the Court has supplemental jurisdiction over his state law claims.[60] The DARC defendants do not move to dismiss Price's state law claims on any other grounds. Accordingly, the DARC defendants' motion to dismiss Price's state law claims is DENIED.

---

[59]    42 U.S.C. § 1437v(h).

[60]    *See* 28 U.S.C. § 1367(a).

**D. Insufficient Service of Process**

The DARC defendants assert that although they have been served with Price's amended complaint, they have not been served with his original complaint. The record reflects that the DARC defendants have not been served with Price's original complaint.[61] The Court hereby ORDERS Price to either obtain a waiver of service from the DARC defendants,[62] or else serve the DARC defendants with his original complaint and file proof of service within TWENTY (20) DAYS.[63]

**IV. CONCLUSION**

For the reasons stated, defendants' motion is GRANTED IN PART and DENIED IN PART.

New Orleans, Louisiana, this 10th day of May, 2010.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

[61] (*See* R. 7, 9-11.)

[62] Fed. R. Civ. P. 4(d).

[63] Fed. R. Civ. P. 4(m).